UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

IN RE:

| | | |
|---|---|---|
| ERIC LARELLE AMOS | ) | |
| | ) | Case No: 21-00976 |
| VICTORIA MICHELLE AMOS | ) | Chapter 13 |
| | ) | |
| DEBTORS | ) | |

**MOTION FOR RELIEF FROM AUTOMATIC STAY AND ABANDONMENTOF REAL PROPERTY IN CHAPTER 13 WITH 30 DAY WAIVER**

Comes now, WILIMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS

INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2014-2, (hereinafter

'Creditor') by counsel, and hereby moves the Court, pursuant to 11 U.S.C. §362(d) and §554, to lift the

automatic stay and abandon from the bankruptcy estate the following real property located at:

Lot No. 103 in A.V. Brown's Riverside Park Addition to the City of
Indianapolis, as per plat thereof, recorded in Plat Book 17, page 132, in
the Office of the Recorder of Marion County, Indiana.

and commonly known as: 1205 N. Holmes Avenue, Indianapolis, IN 46222 - referred to as the 'Property'.

1. The Debtors filed a Chapter 13 case on March 15, 2021- referred to as the 'Petition Date'.

2. A mortgage was given by Dorothy L. Stevenson, title owner of the Property, to secure a promissory note- hereinafter referred to as the 'Note' dated 03/17/2000 and made payable to the original Creditor in the sum of $33,000.00 - a copy of which is attached as *'Exhibit A'*.

3. Dorothy L. Stevenson is now deceased and Debtors have claimed an interest in the Property as successors and/or heirs of Dorothy L. Stevenson.

4. As of the Petition Date, the amounts to due to Creditor under the Note were secured by a mortgage on the Property, which is more particularly described in the Mortgage – a copy of which is attached as *'Exhibit B'*.

5. The Creditor perfected its interest in the Property by the recordation of its Mortgage in the Marion County Recorder's Office on 04/12/2000.  Evidence of perfection is found in *'Exhibit B'*.

6. WILIMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2014-2 is the original mortgagee or beneficiary or assignee of the security instrument for the referenced loan. WILIMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF

MFRA TRUST 2014-2 directly or through and agent has possession of the promissory note and the promissory note is either made payable to WILIMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2014-2 or has been duly endorse - a copy of the assignment is attached as *'Exhibit C'*.

7.  As of March 15, 2021, the outstanding principal balance of the Note was $25,351.63 and the outstanding interest due was $9,287.25.

8.  Debtors have not taken any action to assume the Note or to account for the amounts due under the Note within their Chapter 13 Plan.  Accordingly, Debtors have not accounted for Creditor's interest within their bankruptcy.

9.  As of March 15, 2021, the Note is in default by missing the payments for the months of December 2017 through March 2021.  A payment history is attached as *'Exhibit D'*.

10. As of May 25, 2021, the total arrearage is calculated as 1 times the monthly payment of $310.91 plus 22 times the monthly payment of $439.35 plus 1 times the monthly payment of $408.38 plus 18 times the monthly payment of $407.21 for a total of $17,714.77. A payment history is attached as *'Exhibit D'*.  All current monthly payments are made to the Creditor at: Planet Home Lending, LLC 321 Research Parkway, Suite 303 Meriden, Connecticut  06450-8301.

11. Debtors have also failed to adequately protect or otherwise provide Creditor proof of insurance naming Creditor as loss payee in the event of a casualty loss of the real property, as required by the Note and Mortgage.

12. As of May 10, 2021, the total amount necessary to cure the debt is $24,218.69 which consists of $17,714.77 for missed payments and $6,503.92 in post-petition expenses and fees.

13. The following is an itemization of the expenses and fees that are due post-petition:

| | | | |
|---|---|---|---|
| a. | Attorney Fees: | $ | 1,050.00 |
| b. | Late Charges: | $ | 159.24 |
| c. | Corporate Advance: | $ | $4,473.71 |
| d. | Filing Fee: | $ | 181.00 |
| e. | Foreclosure Fees: | $ | 753.86 |
| f. | Suspense Credit: | $ | -113.89 |
| | Total Expenses: | $ | 6,503.92 |

14. Creditor's interests have not been adequately accounted for in Debtors' bankruptcy and, accordingly, Creditor has not been given adequate protection with regard to its security interest in the Property.

15. The Property is burdensome to the estate or is of inconsequential value and benefit to the estate.  Cause exists to lift the automatic stay since the interest of the Creditor is not being adequately protected.

16. That the Rule 4001 fourteen-day stay should be waived upon the entry of an order.

PLEASE TAKE NOTICE THAT any objection must be filed with the Bankruptcy Clerk within 14 days of the date of this notice.  Those not required or not permitted to file electronically must deliver any objection by U.S. mail, courier, overnight/express mail, or in person at:

116 U.S. Courthouse
46 East Ohio Street
Indianapolis, IN 46204

The objecting party must ensure delivery of the objection to the party filing the motion. If an objection is NOT timely filed, the requested relief may be granted.

WHEREFORE, the creditor moves the Court to enter an order lifting the automatic stay and abandoning the Property, and granting such other relief as appropriate.

Respectfully Submitted,
BLEECKER BRODEY & ANDREWS
By: /s/ Christopher J. Neeson
CHRISTOPHER J. NEESON, Atty. #31767-49
Attorney for WILIMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2014-2
9247 N. Meridian St., Suite 101
Indianapolis, IN 46260
(317) 574-0700 phone
(317) 574-0770 fax
bankruptcy@bbanda.com

**Certificate of Service**

This is to certify that a true and accurate copy of this pleading was served on all creditor and all parties of interest by electronic media or placing a copy in the U.S. Mail on June 25, 2021, at the addresses listed below: United States Trustee via email at *ustpregion10.in.ecf@usdoj.gov*; Debtors' Attorney, Jerry E. Smith, via email at *jerry@debtlaw.us*; Chapter 13 Trustee, Ann M. Delaney via email at *ECFDelaney@trustee13.com*; Debtors, Eric Larelle Amos and Victoria Michelle Amos, at 1205 N Holmes Avenue, Indianapolis, IN 46222.

By: /s / Christopher J. Neeson
Date: June 25, 2021

# Exhibit A

WHEN RECORDED MAIL TO

Accredited Home Lenders, Inc.,
A California Corporation
15030 Avenue of Science, #100
San Diego, CA  92128



LOAN NUMBER:

—————————————————————— [Space Above This Line For Recording Data] ——————————————————————

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on March 17, 2000                    . The mortgagor is
DOROTHY L STEVENSON, ADULT UNMARRIED

("Borrower"). This Security Instrument is given to  Accredited Home Lenders, Inc., A California
Corporation

which is organized and existing under the laws of  the State of California                 , and whose
address is  15030 Avenue of Science, #100, San Diego, CA  92128
                                                  ("Lender"). Borrower owes Lender the principal sum of
Thirty Three Thousand and No/100

                                                  Dollars (U.S. $  33,000.00          ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on   April 1, 2030            .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals,
extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect
the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this

**INDIANA**-Single Family-**FNMA/FHLMC UNIFORM
INSTRUMENT Form 3015   9/90**
-6R(IN) (9807).01              **Amended 5/91**
      VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 7                    Initials:

AHL 161101 (01/00)

04/12/00 11:40AM WANDA MARTIN MARION CTY RECORDER   JNV   23.00 PAGES: 8
Inst # 2000-0056368

Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in                                                                                              MARION   County, Indiana:
LOT NO. 103 IN A.V. BROWN'S RIVERSIDE PARK ADDITION TO THE CITY OF
INDIANAPOLIS, AS PER PLAT THEREOF, RECORDED IN PLAT BOOK 17, PAGE 132, IN THE
OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA

which has the address of   1205 N HOLMES AVENUE,    INDIANAPOLIS                                    [Street, City],
Indiana      46222                                  [Zip Code]  ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

-6R(IN) (9607).01                                                    Form 3015  9/90
     AHL 161102 (9/97)          STEVENSON       [redacted]           Initials: _____

Page 2 of 7

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold,

Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security

Form 3015  9/90

-6R(IN) (9607).01                                         Page 4 of 7                                         Initials: _D_ _S_

AHL 161104 (9/97)                    STEVENSON

Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

-6R(IN) (9607).01

AHL 161105 (9/97)

STEVENSON

Page 5 of 7

Form 3015 9/90

Initials

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower.

**23. Waiver of Valuation and Appraisement.** Borrower waives all right of valuation and appraisement.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ 1-4 Family Rider |
| ☐ Graduated Payment Rider | ☐ Planned Unit Development Rider | ☐ Biweekly Payment Rider |
| ☐ Balloon Rider | ☐ Rate Improvement Rider | ☐ Second Home Rider |
| ☐ VA Rider | ☐ Other(s) [specify] | |

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_____    Dorothy L Stevenson _____ (Seal)
                                     DOROTHY L STEVENSON                    -Borrower

_____    _____ (Seal)
                                                                      -Borrower

_____ (Seal)     _____ (Seal)
                         -Borrower                                    -Borrower

**STATE OF INDIANA,**                                  Marion    County ss:

On this   17   day of   March   , 2000 , before me, the undersigned, a Notary Public in and for said County, personally appeared   Dorothy L Stevenson

, and acknowledged the execution of the foregoing instrument.

WITNESS my hand and official seal.

My Commission Expires: 12-27-06                    Carol L Jackson
                                                   Notary Public  CAROL L. JACKSON

This instrument was prepared by:

         Accredited Home Lenders, Inc.

CAROL L. JACKSON
SEAL Notary Public
Resident of Marion County
State of Indiana
My Commission Expires Dec. 27, 2006

-6R(IN) (9607).01                  Page 7 of 7                        Form 3015  9/90

AHL 161107 (9/97)

File No. █████████

## EXHIBIT "A"

Lot No. 103 in A.V. Brown's Riverside Park Addition to the City of
Indianapolis, as per plat thereof, recorded in Plat Book 17, page 132, in
the Office of the Recorder of Marion County, Indiana.

Exhibit B

# NOTE

March 17th ,2000                INDIANAPOLIS          , Indiana
[Date]                                      [City]                      [State]

1205 N HOLMES AVENUE, INDIANAPOLIS, Indiana  46222
[Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 33,000.00                    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is

Accredited Home Lenders, Inc., A California Corporation                              . I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 10.865 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments

I will pay principal and interest by making payments every month.

I will make my monthly payments on the    1st    day of each month beginning on   May 1st                  , 2000 . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on    April 1st              ,  2030       , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at   10790 Rancho Bernardo Road, SAN DIEGO, CA  92127

or at a different place if required by the Note Holder.

(B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $310.91                 .

### 4. BORROWER'S RIGHT TO PREPAY   - See Prepayment Charge Rider attached hereto.

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

### 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

### 6. BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of    15    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**MULTISTATE FIXED RATE NOTE** - Single Family - **FNMA/FHLMC Uniform Instrument**

VMP -5R (9105).02                    **Form 3200 12/83**
                                      **Amended 5/91**

VMP MORTGAGE FORMS - (313)293-8100 - (800)521-7291

Page 1 of 2                    Initials: _____
AHL 002101  (12/99)                         STEVENSON



**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7. GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8. OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9. WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10. UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Dorothy L Stevenson_ _____ (Seal)
DOROTHY L STEVENSON                      -Borrower
SSN: ███████████

_____ (Seal)
                                 -Borrower
SSN:

_____ (Seal)
                                 -Borrower
SSN:

_____ (Seal)
                                 -Borrower
SSN:

                    *(Sign Original Only)*

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

Loan No: ▮▮▮▮▮▮▮▮

Mortgagee: DOROTHY L STEVENSON

Address: 1205 N HOLMES AVENUE,
INDIANAPOLIS, Indiana  46222

Loan Amount: $33,000.00

# ALLONGE TO NOTE

PAY TO THE ORDER OF:

EquiCredit Corporation of America

WITHOUT RECOURSE

*Helen G. Hayes* (signature)

Helen G. Hayes

Assistant Secretary
Accredited Home Lenders, Inc.,
A California Corporation

WITHOUT RECOURSE
PAY TO THE ORDER OF

EQUICREDIT CORPORATION OF IN

EquiCredit Corporation of America

By _____
C. J. HINTON, VP

WITHOUT RECOURSE
PAY TO THE ORDER OF

EquiCredit Corporation of IN

By _____
C. JARVIS, AVP

AHL 620017 (2/00)                    STEVENSON
allonge.doc

# PREPAYMENT CHARGE RIDER TO NOTE

THIS PREPAYMENT CHARGE RIDER is made this ___17th___ day of ___March___ , 2000
and is incorporated into and shall be deemed to amend and supplement the Note (the "Note") of the same
date given by the undersigned (the "Borrower") to ___Accredited Home Lenders, Inc., A___
___California Corporation___ (the "Lender").

## NOTICE TO THE BORROWER

## DO NOT SIGN THIS RIDER TO NOTE BEFORE YOU READ IT. THIS RIDER TO NOTE PROVIDES FOR THE PAYMENT OF A PENALTY IF YOU WISH TO REPAY THE NOTE PRIOR TO THE DATE PROVIDED FOR REPAYMENT IN THE NOTE.

## PREPAYMENT CHARGE

I may make a full prepayment or partial prepayments. However, if the aggregate amount of the
prepayments made during any twelve (12) month period within ___Sixty___ ( 60 ) months
of the date of execution of the Note exceeds twenty percent (20%) of the original principal amount of the
Note, then as consideration for the acceptance of such prepayment(s), I agree to pay the Note Holder a
sum equal to six (6) months interest on the amount by which such prepayment(s) exceed twenty percent
(20%) of the original amount of this Note. Any prepayments made after said initial
___Sixty___ ( 60) month period shall not be subject to any prepayment charge.


| _Dorothy L Stevenson_ 3-17-00 | | _____ | |
|---|---|---|---|
| Borrower    DOROTHY L STEVENSON | Date | Borrower | Date |
| _____ | | _____ | |
| Borrower | Date | Borrower | Date |
| _____ | | _____ | |
| Borrower | Date | Borrower | Date |
| _____ | | _____ | |
| Borrower | Date | Borrower | Date |


1ST: AL, AZ, CA, CO, CT, DE, FL, GA, HI, ID, IL, IN, ME, MT, NC, ND, NE, NH, NV, OK, OR, PA, SC, SD, TN, TX, UT, VA, WA, WY
2ND: AL, AZ, CA, CO,DE, FL, GA, HI, IL,MA, MT, NE, NH, NV, OK, OR, SD, TN

1st & 2nd Parity used.

Prepay1.doc

AHL 004400 (01/99)

EXHIBIT C

A201900091617

09/19/2019 09:47 AM
KATHERINE SWEENEY BELL
MARION COUNTY IN RECORDER
FEE: $ 35.00
PAGES: 2
By: ER

## CORPORATE ASSIGNMENT OF MORTGAGE

Marion, Indiana
Mission Global LLC#: ███████ "STEVENSON"

Date of Assignment: SEPTEMBER 13, 2019

Assignor: U. S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST X BY MFRESIDENTIAL ASSETS I, LLC ITS ATTORNEY-IN-FACT at C/O NEW RESIDENTIAL INVESTMENT CORP - 1345 AVENUES OF THE AMERICAS, 45TH FLOOR, NEW YORK, NY 10105
Assignee: WILMINGTON TRUST, NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE OF MFRA TRUST 2014-2 at 350 PARK AVENUE, 20TH FLOOR, NEW YORK, NY 10022

Executed By: DOROTHY L STEVENSON ADULT, UNMARRIED To: ACCREDITED HOME LENDERS, INC.
Dated: 03-17-2000 Recorded: 04-12-2000 as Instrument No. 2000-0056368, Book/Reel/Liber N/A, Page/Folio N/A In the County of Marion, State of Indiana.

Property Address: 1205 N HOLMES AVENUE, INDIANAPOLIS, IN 46222

KNOW ALL MEN BY THESE PRESENTS, that for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the said Assignor hereby assigns unto the above-named Assignee, the said Mortgage having an original principal sum of $33,000.00 with interest, secured thereby, and the full benefit of all the powers and of all the covenants and provisos therein contained, and the said Assignor hereby grants and conveys unto the said Assignee, the Assignor"s interest under the Mortgage.

TO HAVE AND TO HOLD the said Mortgage, and the said property unto the said Assignee forever, subject to the terms contained in said Mortgage.

U. S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST X BY MFRESIDENTIAL ASSETS I, LLC ITS ATTORNEY-IN-FACT POA: 4/18/2019 in Instrument No.: A201900034062
On SEPTEMBER 13, 2019

By: _____
Neil Spagna, Sr. Vice President

STATE OF New York
COUNTY OF New York

On the _____13th_____ day of ___September___ in the year _____2019_____ before me, the undersigned, personally appeared Neil Spagna, Sr. Vice President of U. S. BANK NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY, BUT SOLELY AS TRUSTEE FOR NRZ PASS-THROUGH TRUST X BY MFRESIDENTIAL ASSETS I, LLC ITS ATTORNEY-IN-FACT, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is(are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

WITNESS my hand and official seal,

_____
Jannette Ortiz
Notary Public State of New York
Notary Expires: 3/25/2023  #01OR6389252
Qualified in New York County

JANNETTE ORTIZ
Notary Public, State of New York
Registration #01OR6389252
Qualified in New York County
Commission Expires March 25, 2023

*9/13/2019 3:55:48 PM ███████████ INSTATE_MORT_ASSIGN_ASSN

Exhibit D

```
BNKC[████████████]          BNKRUPTCY PROOF OF CLM CH 13 INV K40 03/15/21 15:14:52
DL STEVENSO  DUE 12/01/17  PMT    310.91  TYPE CONV. RES
1205 N HOLMES AVE          INDIANAPOLIS IN 46222
----------------------------- PRE-PETITION CLAIM -----------------PRO PSO-----
CLAIMED   ACKNOWLEDGED  CONFIRMED      CLAIM TOT    CONFIRMED TOT   PRIN BALANCE
03-16-21                              17,059.59 *      17,059.59    25,351.63
REVISED CLAIM MONTH: MM/YY   PRE-PETITION CLAIM:  Y  CLM:               OVR:  Y
---------------- PAYMENTS -----------------  ---------- LATE CHARGES ---------
DUE DATE - DUE DATE    AMOUNT      TOTAL  NUM   AMOUNT      TOTAL  PD-TO-DT
12-01-17 - 12-01-17    310.91     310.91   1     .00         .00
01-01-18 - 10-01-19    439.35   9,665.70  22     .00         .00
11-01-19 - 11-01-19    408.38     408.38   1     .00         .00
12-01-19 - 03-01-21    407.21   6,515.36  16     .00         .00




12-01-17 - 03-01-21            16,900.35  40                 .00         .00
```

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

571-\  P L A N E T  H O M E  L E N D I N G

**Loan Number:** ▉▉▉▉▉▉▉▉▉▉        **Borrower Name:**  STEVENSON,DOROTHY L

```
DDCH   ▉▉▉▉▉▉▉▉▉  CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:15:07
DL STEVENSO    L:R F:S B:A R:    12/01/17 TYPE CONV. RES.         MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
------------------------------------------------------------ * MORE *-------
        PAYEE            TRAN      RSN       USR          ESC PAYEE
   _ SORT           _ SORT      _ SORT     _ SORT        _ SORT
DATE RANGE:  _____  THRU _____
TRN USR  ID   DATE      TRAN AMT  ESC PAYEE  PAYEE RSN  DESCRIPTION      DISBDT

601 4TC 0026 051221       1.00              71T01 TAXB DUP TAX BILL FEE

632 NIV 0025 042121     503.86  ATTYANDREW 93R01 FCSC FC SALE COSTS

630 NIV 0024 042121     250.00  ATTYANDREW 93R01 FCAF FC ATTNY FEES

631 NIV 0023 030221      14.00  PRESNATION 93R01 INSP PROP INSPECTION

632 NIV 0022 011221     503.86  ATTYANDREW 93R01 FCSC FC SALE COSTS
```

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

### 571 - \  P L A N E T  H O M E  L E N D I N G

Loan Number: ███████████                              Borrower Name:  STEVENSON,DOROTHY L

```
DDCH ███████████ CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:15:26
DL STEVENSO     L:R F:S B:A R:   12/01/17 TYPE CONV. RES.              MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
------------------------------------------------------- * MORE *-------
_____ PAYEE       ___ TRAN     ____ RSN    ___ USR   _____ ESC PAYEE
_ SORT            _ SORT       _ SORT       _ SORT             _ SORT
DATE RANGE: _____ THRU _____
TRN USR  ID    DATE     TRAN AMT  ESC PAYEE  PAYEE RSN  DESCRIPTION      DISBDT

630 NIV 0021 011221      250.00  ATTYANDREW 93R01 FCAF FC ATTNY FEES

631 NIV 0020 120320       14.00  PRESNATION 93R01 INSP PROP INSPECTION

630 NIV 0019 101220      560.00  ATTYANDREW 93R01 FCAF FC ATTNY FEES

631 NIV 0018 100820       14.00  PRESNATION 93R01 INSP PROP INSPECTION

630 NIV 0017 100720      560.00  ATTYANDREW 93R01 FCAF FC ATTNY FEES
```

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

### 571 -\   P L A N E T   H O M E   L E N D I N G

Loan Number ███████████                                    Borrower Name:  STEVENSON,DOROTHY L

DDCH ████████████ CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:15:42
DL STEVENSO   L:R F:S B:A R:   12/01/17 TYPE CONV. RES.                MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
-------------------------------------------------------------- * MORE *-------
_____ PAYEE      ____ TRAN     ____ RSN    ___ USR    _____ ESC PAYEE
   _ SORT            _ SORT         _ SORT     _ SORT           _ SORT
DATE RANGE: _____ THRU _____
TRN USR  ID   DATE     TRAN AMT  ESC PAYEE  PAYEE RSN  DESCRIPTION       DISBDT

| TRN | USR | ID   | DATE   | TRAN AMT | ESC PAYEE | PAYEE RSN | DESCRIPTION        | DISBDT |
|-----|-----|------|--------|----------|-----------|-----------|--------------------|--------|
| 631 | NIV | 0016 | 062520 | 14.00    |           | PRESNATION 93R01 | INSP PROP INSPECTION |        |
| 632 | NIV | 0015 | 052020 | 75.00    |           | ATTYANDREW 93R01 | FCTC FC TITLE COSTS  |        |
| 632 | NIV | 0014 | 052020 | 163.00   |           | ATTYANDREW 93R01 | FCSE FC SRV COSTS    |        |
| 630 | NIV | 0013 | 052020 | 250.00   |           | ATTYANDREW 93R01 | FCAF FC ATTNY FEES   |        |
| 631 | NIV | 0012 | 032520 | 14.00    |           | PRESNATION 93R01 | INSP PROP INSPECTION |        |

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

571 -\   P L A N E T  H O M E  L E N D I N G

Loan Number: ████████████          Borrower Name:  STEVENSON,DOROTHY L

```
DDCH ███████████ CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:15:56
DL STEVENSO   L:R F:S B:A R:   12/01/17 TYPE CONV. RES.           MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
-------------------------------------------------------- * MORE *-------
_____ PAYEE        ___ TRAN     ____ RSN     ___ USR  _____ ESC PAYEE
   _ SORT           _ SORT       _ SORT       _ SORT            _ SORT
DATE RANGE: _____ THRU _____
TRN USR  ID   DATE     TRAN AMT  ESC PAYEE  PAYEE RSN  DESCRIPTION      DISBDT

632 NIV 0011 022520     250.00   ATTYANDREW 93R01 FCTC FC TITLE COSTS

632 NIV 0010 022520     162.10   ATTYANDREW 93R01 FCFC FC FIING COSTS

630 NIV 0009 022520      35.00   ATTYANDREW 93T01 FCAF FC ATTNY FEES

630 NIV 0008 022520   1,400.00   ATTYANDREW 93R01 FCAF FC ATTNY FEES

601 CMS 0007 022020      25.00   MISCFIRSTA 71T01 MODC MOD CORP ADV
```

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

### 571 -\  P L A N E T  H O M E  L E N D I N G

Loan Number: ███████                          Borrower Name:  STEVENSON,DOROTHY L

```
DDCH  ████████  CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:16:10
DL STEVENSO    L:R F:S B:A R:    12/01/17 TYPE CONV. RES.            MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
------------------------------------------------------------ * MORE *-------
_____ PAYEE        ___ TRAN      ____ RSN     ___ USR     _____ ESC PAYEE
   _ SORT          _ SORT        _ SORT       _ SORT             _ SORT
DATE RANGE: _____ THRU _____
TRN USR  ID   DATE     TRAN AMT  ESC PAYEE  PAYEE RSN  DESCRIPTION      DISBDT

631 NIV 0006 011420      14.00   PRESNATION 93R01 INSP PROP INSPECTION

601 CMS 0005 111819     125.00   MISCFIRSTA 71R01 TIRP TITLE REPORT

631 NIV 0004 082619      14.00   PRESNATION 93R01 INSP PROP INSPECTION

631 NIV 0003 053019      14.00   PRESNATION 93R01 INSP PROP INSPECTION

745 CPI 0002 050119      49.06                       ELI  LOAN CONV
```

## MSP® Explorer: History of Corporate Advance Tran (DDCH)

### 571 -\   P L A N E T   H O M E   L E N D I N G

Loan Number: ██████████                              Borrower Name:  STEVENSON,DOROTHY L

```
DDCH ██████████  CORPORATE ADVANCE HISTORY SCREEN  K40/001 05/18/21  13:16:24
DL STEVENSO    L:R F:S B:A R:    12/01/17 TYPE CONV. RES.              MAN B
1205 N HOLMES AVE INDIANAPOLIS IN 46222
------------------------------------------------------------- * END *--------
_____ PAYEE       ___ TRAN    ____ RSN   ___ USR   _____ ESC PAYEE
  _ SORT          _ SORT      _ SORT     _ SORT            _ SORT
DATE RANGE: _____ THRU _____
TRN USR  ID   DATE      TRAN AMT   ESC PAYEE   PAYEE RSN   DESCRIPTION      DISBDT

745 CPI 0001 050119      62.75                        ELI  LOAN CONV
```

```
** BEGINNING CORP ADV BALANCE:                   0.00
** TOTAL OF TRANS DISPLAYED ON DDCH:         5,337.63
** OUTSTANDING CORP ADV BALANCE:             5,337.63
```

```
Label Matrix for local noticing        Wilmington Trust, National Association, Not    AT&T
0756-1                                  Planet Home Lending, LLC                       Attn: Bankruptcy
Case 21-00976-JJG-13                    321 Research Parkway                           4331 Communications Drive, Floor 4W
Southern District of Indiana            Suite 303                                      Dallas, TX 75211-1300
Indianapolis                           Meriden, CT 06450-8342
Wed Jun 23 15:05:13 EDT 2021

American Acceptance Co LLC              Baam Financl                                   (p)BLEECKER BRODEY AND ANDREWS
214 Glencoe Dr                         4302 Lafayette Rd                              9247 N MERIDIAN ST STE 101
Valparaiso, IN 46385-7760              Indianapolis, IN 46254-2456                    INDIANAPOLIS IN 46260-1813


Carl L. Peters, Attorney               Charter Communications                        Citizens Energy Group
8902 B Otis Ave                        400 Atlantic St Floor 10                      Attn: Bankruptcy
Suite 200                              Stamford, CT 06901-3512                       2020 N Meridian St
Indianapolis, IN 46216-1033                                                          Indianapolis, IN 46202-1393


Consumer Adj                           Coppertree Apts                               Creditmax Inc
1671 Larkin                            9795 Crosspoint Blvd #175                     12820 Coldwater Rd Ste G
Fenton, MO 63026                       Indianapolis, IN 46256-3339                   Fort Wayne, IN 46845-8755


Directv, LLC                           Eagle Accounts Group                          Enhanced Recovery Co L
by American InfoSource as agent        7510 Madison Ave                             8014 Bayberry Rd
PO Box 5072                            Indianapolis, IN 46227-5510                   Jacksonville, FL 32256-7412
Carol Stream, IL 60197-5072


Equifax                                Experian                                      First Premier Bank
Attn: Bankruptcy                       Attn: Bankruptcy                              601 S Minnesota Ave
PO Box 740241                          PO Box 2002                                   Sioux Falls, SD 57104-4868
Atlanta, GA 30374-0241                 Allen, TX 75013-2002


IC System                              (p)INDIANA DEPARTMENT OF REVENUE              Indiana Department of Revenue
444 Highway 96 East                    ATTN BANKRUPTCY                               Attn: Bankruptcy
PO Box 64378                           100 N SENATE AVE                              100 N Senate Ave, Rm N203
St. Paul, MN 55164-0378                INDIANAPOLIS IN 46204-2253                    Indianapolis, IN 46204-2217


Internal Revenue Service               (p)JEFFERSON CAPITAL SYSTEMS LLC              Jerry E. Smith, Attorney CPA, PC
Attn: Bankruptcy                       PO BOX 7999                                   320 N Meridian St, Suite 515
PO Box 7346                            SAINT CLOUD MN 56302-7999                     Indianapolis, IN 46204-1724
Philadelphia, PA 19101-7346


LVNV Funding LLC                       LVNV Funding, LLC                             Lvnv Funding Llc
6801 S Cimarron Rd Ste 424J            Resurgent Capital Services                    Po Box 1269
Las Vegas, NV 89113-2273               PO Box 10587                                  Greenville, SC 29602-1269
                                       Greenville, SC 29603-0587


Madison Avenue Associates Inc          Pinnacle Service Solutions LLC                Premier Bankcard, LLC
7470 E 82nd St                         4408 Milestrip Rd #247                        Jefferson Capital Systems, LLC Assignee
Indianapolis, IN 46256-1423            Blasdell, NY 14219-2553                       PO Box 7999
                                                                                     St Cloud, MN. 56302-7999
```

Rmp Llc
8085 Knue Rd
Indianapolis, IN 46250-1921

Southwest Credit Syste
4120 International Pkwy
Carrollton, TX 75007-1958

Stephen J. Hyatt, Attorney
9801 Fall Creek Rd
Indianapolis, IN 46256-4802

(p)T MOBILE
C O AMERICAN INFOSOURCE LP
4515 N SANTA FE AVE
OKLAHOMA CITY OK 73118-7901

TransUnion
Attn: Bankruptcy
PO Box 1000
Chester, PA 19016-1000

U.S. Trustee
Office of U.S. Trustee
101 W. Ohio St.. Ste. 1000
Indianapolis, IN 46204-1982

Webbank/Fingerhut
6250 Ridgewood Rd
Saint Cloud, MN 56303-0820

Wilmington Trust NA
1100 N Market St
Wilmington, DE 19801-1281

World Finance Corp. c/o World Acceptance Cor
Attn: Bankruptcy Processing Center
PO Box 6429
Greenville, SC 29606-6429

World Finance Corporat
104 S Main St Ste 400
Greenville, SC 29601-2711

Ann M. DeLaney
Office of Ann M. Delaney
PO Box 441285
Indianapolis, IN 46244-1285

Eric Larelle Amos
1205 N Holmes Ave
Indianapolis, IN 46222-3634

Jerry E. Smith
Jerry E. Smith, Attorney CPA, PC
320 N Meridian St Ste 515
Indianapolis, IN 46204-1724

Victoria Michelle Amos
1205 N Holmes Ave
Indianapolis, IN 46222-3634

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bleeker, Brodey & Andrews
9247 N Meridian St Ste 101
Indianapolis, IN 46260

INDIANA DEPARTMENT OF REVENUE
BANKRUPTCY SECTION
100 N SENATE AVE
INDIANAPOLIS, IN 46204

Jefferson Capital Systems LLC
PO Box 7999
Saint Cloud MN 56302-9617

T-Mobile US Inc
12920 SE 38th Street
Bellevue, WA 98006

End of Label Matrix
Mailable recipients    43
Bypassed recipients     0
Total                  43